RICHARD ABBEY et al. *v.* COMMERCIAL BANK OF NEW ORLEANS.

1. EXECUTION : SCI. FA.—Where an execution has been regularly issued to enforce a judgment within a year and a day from the date of its rendition, an *alias* execution may be issued without revival of the judgment by *sci. fa.* where no new

parties are necessary, at any time within the period prescribed by the Statute of Limitations, viz., seven years.

2. LIMITATIONS, STATUTE OF: FRAUDULENT CONVEYANCES.—The Statute of Limitations will not run in favor of the wife and child of a judgment debtor—they being the fraudulent grantees of his property, for the purpose of defeating his creditors—so as to bar a bill filed in equity to subject it to the payment of his debts; it appearing that the debtor has remained in the use and possession of the property, and that the judgment of complainants has been kept in full force, and its satisfaction prevented by the fraudulent conveyance.

3. CHANCERY: JURISDICTION: FRAUDULENT CONVEYANCE.—The statute (Hutch. Code 904, § 27,) which authorizes a judgment-creditor to proceed by *scire facias* at law, to procure satisfaction of his debt out of property which has been fraudulently conveyed by the debtor, does not exclude the jurisdiction of a court of equity to set aside fraudulent conveyances.

APPEAL from the Vice-chancery Court at Yazoo city. Hon. Selden S. Wright, vice-chancellor.

The allegations of the original and amended bill are sufficiently stated in the opinion of the court.

*R. B. Mayes*, for appellants.

*Gibbs* and *Bowman*, for appellees.

HANDY, J., delivered the opinion of the court.

This case comes up on an appeal from a decree of the District Chancery Court at Yazoo city, overruling a demurrer to a bill filed by the appellee, a judgment creditor, for the purpose of subjecting to the payment of the judgment, certain property of the appellants alleged to have been conveyed in fraud of creditors.

The first proposition insisted on in support of the demurrer is, that the judgment on which the bill was founded, had not been kept alive by the regular issuance of executions, or by *scire facias*, and therefore that it could not be the foundation of a proceeding in equity to enforce it.

In support of this view, it is said that the record shows that the judgment at law was rendered on the 18th of May, 1839, that in July, 1839, a *fieri facias*, was issued, under which there was a levy, but no sale; that on the 2d of December, 1839, a *venditioni exponas* was issued; that on the 8th of December, 1840, another

writ of *fi. fa.* issued, and on the 7th of February, 1851, another writ of *fi. fa.* issued which two last writs were each returned "*nulla bona.*" And, as there was no execution issued after that of the 8th of December, 1840, and within a year and a day thereafter, it is insisted that no execution could issue upon the judgment without a revival by *scire facias.*

The ancient rule is laid down to be, "that when an execution is taken out within the year, and not executed, a new writ of execution may be sued out at any time afterwards without a *scire facias* ; provided the first writ be returned and filed, and continuances entered from the time of issuing it." 2 Tidd, Pr. 1104, (3d Amer. ed.) The necessity for a *scire facias* to revive the judgment when no execution had been issued within a year after the rendition of the judgment, was founded on the legal presumption that the judgment had been released, or satisfied, and that the defendant should have an opportunity to show such discharge. But where an execution has been issued, and been returned "*nulla bona,*" the presumption of satisfaction is expressly negatived of record, and the reason of the rule requiring a *scire facias* cannot apply. 2 Tucker, Comm. 338 ; *Aires* v. *Hardress,* 1 Strange, 100. And the same reason would render it unnecessary to issue an execution within a year after the return of an execution, showing a sale of property under it, but not sufficient to satisfy the judgment. For this, in law, is equivalent to a return of satisfaction in part by levy, and "*nulla bona*" as to the residue of the judgment."

The plaintiff in the judgment under consideration might, therefore, have legally issued his execution without revival by *scire facias,* before the passage of the Statute of Limitations of 1844 ; and that statute distinctly recognizes the right to issue the execution, where there was no change of parties requiring a *scire facias,* within seven years from the date of its passage. The last execution in this case was issued within that time, and the judgment was thereby kept in full force and effect, and was so at the time when the bill in this case was filed.

The second objection made in support of the demurrer is, that the plaintiff in the judgment had a complete remedy at law for subjecting the property to his execution, by issuing a *scire facias*

under the provisions of the act, Hutch. Code, 904, § 27, against the parties fraudulently claiming the property.

But this statute cannot be regarded as excluding the jurisdiction of a Court of Equity to set aside fraudulent conveyances, so well established and universally recognized by the practice of our courts. That jurisdiction is certainly much more ample in enabling the creditor to unite the original defendant with the other parties implicated in the alleged fraudulent conveyance, and in compelling a discovery, under oath, from all the parties, which may often be of the utmost importance in bringing to light facts which could otherwise never be brought to judicial notice. These advantages of proceeding in equity in such cases, as well as the well established jurisdiction of that court in all matters of fraud and unconscientious concealment, show that the remedy authorized by the statute was only intended to be concurrent with the jurisdiction of a court of equity.

The only remaining objection to the bill is, that it was not filed in due season, and is therefore barred by the Statute of Limitations. The bill and amended bill charge, in substance, that Abbey has fraudulently procured the property sought to be charged, to be conveyed for the benefit of his family; that he remained in the possession and use of it under the fraudulent arrangement; and that the complainant had no notice of the fraud until within two years before the filing of the bill.

It is true, that the bill was not filed until the lapse of about five years after the fraudulent arrangement was made. But if the complainant's judgment was all that time in force, and was prevented from being satisfied by this arrangement of the defendant, who remained in the possession and use of the property, there being no one claiming adversely, or as purchaser, a court of equity could never sanction the defence of the Statute of Limitations at the instance of the defendant, and his wife and child, the parties to the alleged fraud.

The decree is affirmed, and the cause remanded; and the defendants required to answer within sixty days.